1 | Guy Ruttenberg, Bar No. 207937
  | guy@ruttenbergiplaw.com
2 | Michael Eshaghian, Bar No. 300869
  | mike@ruttenbergiplaw.com
3 | RUTTENBERG IP LAW,
4 | A PROFESSIONAL CORPORATION
  | 1801 Century Park East, Suite 1920
5 | Los Angeles, CA 90067
  | Telephone: (310) 627-2270
6 | Facsimile: (310) 627-2260
7 |
8 | *Attorneys for Defendant Ziff Davis, LLC*
9 |

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| MICHAEL GRECCO PRODUCTIONS, INC. d/b/a MICHAEL GRECCO PHOTOGRAPHY, INC., | Case No. 2:19-cv-04776-DSF-JC |
|---|---|
| Plaintiff, | **DECLARATION OF BASSIL MADANAT IN SUPPORT OF DEFENDANT ZIFF DAVIS' OPPOSITION TO PLAINTIFF'S MOTION TO DISQUALIFY** |
| v. | |
| ZIFF DAVIS, LLC; and DOES 1 through 10 inclusive, | Date: August 16, 2021 |
| Defendants. | Time: 1:30 PM |
| | Courtroom: 7D |
| | Judge: Hon. Dale S. Fischer |

I, Bassil Madanat, declare as follows:

1. I am an attorney admitted to practice in California and in this Court. The statements below are true and correct based on my personal knowledge and recollection.

2. In March and April 2018, I was an associate attorney at the law firm of Ruttenberg IP Law, a Professional Corporation ("RIPL"). I ended my employment with RIPL earlier this month in order to start a new venture. My departure was entirely amicable, and it had nothing to do with this action. I am no longer affiliated with RIPL.

3. I have never worked on the above-captioned matter involving Michael Grecco Productions. I never billed any time to that matter, nor was I ever involved in any discussions of the case. To my understanding, this case was staffed and handled by different attorneys at RIPL.

4. I understand Plaintiff in the above-captioned matter submitted Exhibits A through C in support of a motion to disqualify RIPL. I reviewed Exhibit B and redacted versions of Exhibits A and C. To the best of my recollection, I have never seen or received the emails in Exhibits A or C. I was not copied or forwarded those emails.

5. From reviewing Exhibit B, I remember that Mr. Guy Ruttenberg forwarded the first email in that string so that I could reach out to Ms. Yamada as shown in the email. I recall that, at the time, Mr. Ruttenberg and his wife were in the hospital for the birth of their child. Apart from the information in the first email of Exhibit B (which is very little), I did not have any substantive information before reaching out to Ms. Yamada. I recall that a call was scheduled based on the email string in Exhibit B.

6. As a general practice, when speaking with someone inquiring about representation, I always start the conversation by cautioning that the person should not share any confidential information. Even based on the little information I had at the time, I am confident that I would have instructed Ms. Yamada and Mr. Grecco that they should not share any confidential information. This is especially true since we did

not even have enough information to conduct a conflicts check before the call.  I cannot imagine that any confidential information would have been shared by Ms. Yamada or Mr. Grecco during this preliminary call.

7. Based on my recollection, Mr. Grecco and Ms. Yamada were seeking counsel at the time to help Mr. Grecco represent other photographers. (As far as I understood at the time, this was not confidential.) I remember this aspect of the conversation because I recall having concerns that Mr. Grecco's actions sounded like he may be practicing law without a license. I also recall knowing pretty quickly that this was not the type of representation RIPL would typically consider, so I do not believe we would have discussed these issues in much detail. Because Ms. Yamada had some sort of personal relationship with Mr. Ruttenberg's wife, I promised to speak with Mr. Ruttenberg and revert back. Apart from that, I have very little recollection of my call with Ms. Yamada and Mr. Grecco. After connecting with Mr. Ruttenberg, I would have communicated back to Ms. Yamada and/or Mr. Grecco that our firm was not interested. I do not recall exactly how I communicated that.

8. Because I did not receive any confidential information from Ms. Yamada and Mr. Grecco, I did not have any confidential information to convey to Mr. Ruttenberg.

9. During my call with Mr. Grecco and Ms. Yamada, there was no mention of Ziff Davis or any entity related to J2 Global, which are (and were) long-standing RIPL clients. Had those names been mentioned, I would have recalled that aspect of the conversation.  Indeed, I personally worked on multiple matters for J2/Ziff Davis and their affiliates while I was at RIPL—including before and during March/April 2018.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this day, July 26, 2021, in Falls Church, Virginia.

By: _____
Bassil Madanat