# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL GRECCO PRODUCTIONS, INC., <br>     Plaintiff, <br><br> v. <br><br> ZIFF DAVIS, LLC, <br>     Defendant. | CV 19-4776 DSF (PJWx) <br><br> Order DENYING Motion to Disqualify (Dkt. 76) |

    Plaintiff Michael Grecco Productions (MGP) moves to disqualify Ruttenberg IP Law (RIPL) as counsel of record for Defendant Ziff Davis, LLC (Ziff Davis). Dkt. 76 (Mot.). Ziff Davis opposed the motion. Dkt. 77 (Opp.). MGP replied. Dkt. 80 (Reply). The Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78; Local Rule 7-15. For the following reasons, the Court DENIES the motion to disqualify.

## I. BACKGROUND

    In its initial Complaint, MGP, a professional media and photography company run by Michael Grecco, alleged that on or around November 2018 MGP discovered that Ziff Davis, a global digital-media company, used certain of MGP's copyrighted images on Ziff Davis's websites without MGP's consent. Dkt. 1 (Compl. ¶¶ 9, 13-14, 15, 25). On May 31, 2019, this action commenced. Id. On August 14, 2019, Ziff Davis filed a motion to dismiss, which this Court granted with leave to amend on the basis that the statute of limitations had run. Dkts. 17, 21 (First Dismissal Order). MGP filed an amended complaint on September 30, 2019, alleging that MGP discovered Ziff Davis's

infringing conduct "after conducting a reverse image search of the Images." Dkt. 25 (Am. Compl. ¶ 21). On October 28, 2019, Ziff Davis moved to dismiss MGP's Amended Complaint. The Court granted the motion without leave to amend on the same grounds as the Court's First Dismissal Order and entered judgment against MGP. Dkts. 29, 34-35. On appeal, the Ninth Circuit remanded the case for further factual inquiry as to whether the statute of limitations had run on MGP's claims. Michael Grecco Productions, et al. v. Ziff Davis, LLC, No. 19-56465, 830 F. App'x (9th Cir. Nov. 25, 2020) (mem). This Court subsequently directed the parties to engage in limited discovery to address the statute of limitations question. Dkt. 50. On July 20, 2021, MGP brought the present motion to disqualify RIPL, Ziff Davis's counsel of record.

## II. LEGAL STANDARD

District courts have the inherent authority to disqualify counsel. See United States v. Wunsch, 84 F.3d 1110, 1114 (9th Cir. 1996). In order to determine whether to do so, the courts apply California law. See In re Cnty. of Los Angeles, 223 F.3d 990, 995 (9th Cir. 2000) ("[W]e apply state law in determining matters of disqualification."). Motions to disqualify proceed in two steps. First, the court determines whether counsel has committed an ethical violation. See Rico v. Mitsubishi Motors Corp., 42 Cal. 4th 807, 815 (2007). Second, assuming a violation occurred, the court considers whether disqualification is appropriate. See id. at 819. When considering a motion to disqualify counsel, "a court must balance such varied interests as a party's right to chosen counsel, the interest in representing a client, the burden placed on a client to find new counsel, and the possibility that 'tactical abuse underlies the disqualification motion.'" Gotham City Online, LLC v. Art.com, Inc., No. C 14-00991 JSW, 2014 WL 1025120, at * 2 (N.D. Cal. Mar. 13, 2014) (citing People ex rel Dep't of Corps. v. Speedee Oil Change Sys., Inc., 20 Cal. 4th 1135, 1144-45 (1999)). "An order of disqualification of counsel is a drastic measure, which courts should hesitate to impose except in circumstances of absolute necessity. . . . The moving party, therefore, carries a heavy burden and must satisfy a high standard of proof." Id. at *3 (citations omitted). The

2

Ninth Circuit has "warned that a 'motion to disqualify a law firm can be a powerful litigation tactic to deny an opposing party's counsel of choice.'" Reading Int'l, Inc. v. Malulani Grp., Ltd., 814 F.3d 1046, 1053 (9th Cir. 2016) (quoting In re Cnty. of Los Angeles, 223 F.3d at 995). For this reason, motions to disqualify are subject to "particularly strict judicial scrutiny." Optyl Eyewear Fashion Int'l Corp. v. Style Companies, Ltd., 760 F.2d 1045, 1050 (9th Cir. 1985) (quoting Rice v. Baron, 456 F. Supp. 1361, 1370 (S.D.N.Y. 1978)).

### III. DISCUSSION

MGP contends RIPL is conflicted and cannot represent Ziff Davis in this case because MGP shared confidential information with RIPL as a prospective client under California Rules of Professional Conduct 1.18. Mot. at 4-6. Ziff Davis disagrees. Opp. at 6, 8-9. The parties do not dispute that on March 27, 2018, Torina Yamada, a representative for MGP, unilaterally contacted Yifat Hassid Ruttenberg, the wife of RIPL attorney Guy Ruttenberg, inquiring about whether she knew of any law firms that could represent MGP in copyright infringement matters. See Mot. at 2; Opp. at 2, 9-10; see also Dkt. 76-1 (Grecco Decl. ¶ 4, Ex. 10)). Ms. Yamada's March 27 email disclosed information concerning MGP's litigation practices, infringement investigation software, past and/or pending litigation against alleged copyright infringers, and potential fee arrangements. See Mot. at 2; Opp. at 2-3. The parties do not dispute that Mr. Ruttenberg was copied on this email chain after subsequent communications between Ms. Yamada and Ms. Hassid. Mot. at 2; Opp. at 10. Nor do the parties dispute that Bassil Madanat, an associate at RIPL, arranged for—and participated in—a preliminary telephone call with Mr. Grecco and Ms. Yamada. Mot. at 3; Opp. at 4. MGP alleges that the telephone call consisted of a discussion surrounding the topics disclosed in Ms. Yamada's March 27 email. Mot. at 3. Finally, the parties do not dispute that MGP never engaged RIPL in either the pending litigation or any subsequent litigation. Mot. at 3; Opp. at 9.

A.     Rule 1.18

On November 1, 2018, amendments to the California Rules of Professional Conduct approved by the California Supreme Court went into effect. Relevant to the present motion, the new version of the Rules contains a rule with no corresponding prior counterpart, Rule 1.18, regarding duties to prospective clients. Because the Court must apply California law in determining matters of disqualification, the Court "must follow the reasoned view of the [California] [S]upreme [C]ourt when it has spoken on the issue." Id. While there is no California case law discussing Rule 1.18, the Court finds the Supreme Court's enactment of the Rule is the best indicator of its position on the ethical issue. The Court therefore analyzes this motion under Rule 1.18, which proscribes the following duties to prospective clients:

> (a) A person*[1] who, directly or through an authorized representative, consults a lawyer for the purpose of retaining the lawyer or securing legal service or advice from the lawyer in the lawyer's professional capacity, is a prospective client.
>
> (b) Even when no lawyer-client relationship ensues, a lawyer who has communicated with a prospective client shall not use or reveal information protected by Business and Professions Code section 6068, subdivision (e) and rule 1.6 that the lawyer learned as a result of the consultation, except as rule 1.9 would permit with respect to information of a former client.
>
> (c) A lawyer subject to paragraph (b) shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received from the prospective client information protected by Business and Professions Code

---

[1] An asterisk (*) identifies a word or phrase defined in the terminology rule, Rule 1.0.1.

4

section 6068, subdivision (e) and rule 1.6 that is material to the matter, except as provided in paragraph (d). If a lawyer is prohibited from representation under this paragraph, no lawyer in a firm* with which that lawyer is associated may knowingly* undertake or continue representation in such a matter, except as provided in paragraph (d).

(d) When the lawyer has received information that prohibits representation as provided in paragraph (c), representation of the affected client is permissible if:

    (1) both the affected client and the prospective client have given informed written consent,* or

    (2) the lawyer who received the information took reasonable* measures to avoid exposure to more information than was reasonably* necessary to determine whether to represent the prospective client; and

        (i) the prohibited lawyer is timely screened* from any participation in the matter and is apportioned no part of the fee therefrom; and

        (ii) written* notice is promptly given to the prospective client to enable the prospective client to ascertain compliance with the provisions of this rule.

### B.    **RIPL Did Not Violate Rule 1.18**

RIPL is not subject to disqualification under Rule 1.18 for two principal reasons: (1) neither the emails exchanged between Ms. Yamada and Ms. Hassid nor the telephone call between Mr. Madanat and MGP render MGP a prospective client; (2) even if MGP could be considered a prospective client, MGP did not disclose confidential information of the type that would disqualify RIPL because the information disclosed is either publicly available or was required for RIPL to assess any conflicts.

### 1.   MGP is Not a Prospective Client

As an initial matter, the Court agrees with Ziff Davis that MGP's initial unsolicited emails to Mr. Ruttenberg's wife, allegedly containing MGP's confidential information, do not transform MGP into a prospective client. Comment 2 to Rule 1.18 states that "[a] person* who by any means communicates information unilaterally to a lawyer, without reasonable* expectation that the lawyer is willing to discuss the possibility of forming a lawyer-client relationship or provide legal advice is not a 'prospective client.'" Cal. R. Prof'l Conduct, rule 1.18, cmt. 2. On its face, Ms. Yamada's March 27 email to Ms. Hassid suggests that Ms. Yamada was seeking attorney referrals for MGP, not that MGP specifically targeted RIPL for potential representation. Moreover, both Mr. Ruttenberg and Mr. Madanat deny or otherwise cannot recall ever receiving and/or reading Ms. Yamada's March 27 email. See Dkt. 77-1 (Ruttenberg Decl. ¶¶ 10-12); Dkt. Madanat Decl. 77-4 ¶ 4). Thus, MGP could not have reasonably believed that RIPL would be willing to discuss potential representation based on Ms. Yamada's March 27 email to Ms. Hassid, which was subsequently forwarded to Mr. Ruttenberg.[2]

MGP relies on Ocean Thermal Energy Corp. v, Coe, No. LACV19-05299-VAP-JPR, 2020 WL 5237276 (C.D. Cal. July 29, 2020) for the proposition that it was a prospective client of RIPL. However, Ocean Thermal is readily distinguishable. In Ocean Thermal, the court found that it was undisputed that the prospective client had (1) not retained counsel, (2) sent counsel documents supporting its claim for counsel to review in consideration of taking on the client, (3) counsel agreed to keep the documents confidential, and (4) counsel indicated through text message that he was considering taking on the client. Id. at *5. Here, the record demonstrates that on April 12 and April 13, an associate at

---

[2]   Notably, in Ms. Hassid's March 28 response she stated not that Mr. Ruttenberg or RIPL could assist MGP, but rather that "Guy . . . [is] going to ask around and see if he knows anybody who can help out with this." Grecco Decl. ¶ 20, Ex. C.

RIPL arranged for and participated in a preliminary telephone call with MGP. Mot. at 2-3. Mr. Grecco alleges that he discussed MGP's alleged confidential information concerning MGP's copyright enforcement practices, such as MGP's use of reverse image search technology, and confidential information regarding MGP's copyright infringement matters. Id. at 3. However, unlike in Ocean Thermal, MGP does not allege that it discussed any pending or anticipated litigation, sent any confidential documents to RIPL for review and assessment, received any affirmation or indication from either Mr. Madanat, Mr. Ruttenberg, or that anyone at RIPL that RIPL was considering taking on MGP as a client.

The other opinion Plaintiff relies on also counsels against a finding that MGP is a prospective client. In SkyBell Technologies, Inc. v. Ring, Inc., No. SACV 18-00014 JVS (JDEx), 2018 WL 6016156 (C.D. Cal. Sept. 18, 2018), the court determined that SkyBell was a prospective client because it had pending litigation, engaged in a one hour conversation with its potential counsel evaluating the pending case, sent various materials to its potential counsel, and requested a written proposal to be evaluated against competitor law firms. Id. at *1-2, *5. As explained above, MGP does not allege that it exchanged documents with RIPL, does not indicate—beyond vague assertions of confidential information—what was discussed on the telephone call with Mr. Madanat, nor does MGP allege that RIPL prepared—or was asked to prepare—a written proposal for representation. Thus, based on the facts presented to the Court, MGP is not a prospective client for purposes of Rule 1.18.

### 2. MGP Did Not Disclose Confidential Information

The Court agrees with Ziff Davis that MGP did not disclose confidential information to RIPL because the information disclosed by MGP was either publicly available or could be necessary to determine whether to represent MGP. Courts in the Central District of California have held that "[w]here the allegedly confidential information disclosed during the initial meeting subsequently becomes a matter of public record or is disclosed to third parties, the disqualification movant

7

cannot rely on such disclosures as confidential information." Faraday&Future, Inc. v. EVelozcity, Inc., No. CV 18-737-DMG (RAOx), 2018 WL 4849704, at *7 (C.D. Cal. May 20, 2018); see also Kuyou Sports Goods Co. Ltd. v. Fountain Inc., No. SACV 17-00426 JVS (KESx), 2017 WL 5172239, at *3 (C.D. Cal. June 19, 2017) (holding that a disqualification movant could not establish that it provided counsel with confidential information when the information was available to the public or third parties).[3] Here, it is clear that Mr. Grecco used ImageRights to "troll the Internet for unauthorized uses of his images" and utilized the services of "eight law firms" to combat instances of copyright infringement. See Opp. at 17-18.

Moreover, in his declaration, Mr. Ruttenberg—attorney of record for Ziff Davis (Dkt. 43)—swears that he has no recollection of ever reading Ms. Yamada's March 27 email. Ruttenberg Decl. ¶ 10. Mr. Ruttenberg also attests that the email chain he forwarded to Mr. Madanat was a direct email from Ms. Yamada and contained none of the substance from the March 27 email. Id. ¶ 11. In short, Mr. Ruttenberg swears that neither he nor Mr. Madanat ever read the substance of Ms. Yamada's March 27 email. In addition, Mr. Ruttenberg attests that it is RIPL's general practice and policy to caution individuals "that they should not share confidential information during preliminary discussion" and that Mr. Madanat never worked on the pending matter. Id. ¶¶ 6, 13. Mr. Ruttenberg's declaration is supported by Mr. Madanat's declaration in which he declares that he was never involved with the pending litigation other than the initial April 13 telephone call with MGP, that he never received or read Ms. Yamada's March 27 email, and that as a "general

---

[3] The decision in SkyBell does not require a different result. In SkyBell, the court determined the information that counsel alleged was public – and thus not confidential – was confidential *when* it was communicated to counsel. SkyBell, 2018 WL 6016156, at *6. Here, it was clear in 2015 and 2016 that Mr. Grecco was utilizing software to identify copyright infringers and engaging several law firms to assist him in bringing suit against potential infringers. See Opp. at 17-19.

8

practice, when speaking with someone inquiring about representation, [he] always start[s] the conversation by cautioning that the person should not share any confidential information." Madanat Decl. ¶¶ 4, 6. He is "confident" that he "would have instructed Ms. Yamada and Mr. Grecco that they should not share any confidential information." Id. ¶ 6.

Based on the foregoing, MGP has not satisfied its "heavy burden" to prove that (1) MGP was a prospective client of RIPL's in 2018 and (2) MGP disclosed confidential information to RIPL.

For the reasons set forth above, the motion to disqualify RIPL as counsel for Ziff Davis is DENIED.

IT IS SO ORDERED.

Date: September 8, 2021     _____

Dale S. Fischer
United States District Judge